

*PAID FEE*

*50*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**MARK W. DOBRONSKI,**
an individual,

                          **Plaintiff,**

v.

**SOLIDQUOTE LLC,**
a Delaware limited liability company,

**QUOTEMANAGE, LLC,**
a Colorado limited liability company,

**ACCUQUOTE, INC.,**
an Illinois corporation,

**CONNIE HEALTH INC.,**
a Delaware corporation,

**STEFAN ALEXANDER WIRTZ,**
an individual,

**JONATHON ALEX HARRIS,**
an individual,

**JENNA GEMA GIVENS,**
an individual,

**JOSEPH ELLIOTT,**
an individual,

**LUMICO LIFE INSURANCE COMPANY,**
a Missouri insurance company,

Case: 4:23-cv-10343
Assigned To : Kumar, Shalina D.
Referral Judge: Grey, Jonathan J.C.
Assign. Date : 2/9/2023
Description: COMP DOBRONSKI V.
SOLIDQUOTE LLC, ET. AL (KB)

Defendants.

---

## COMPLAINT

NOW COMES the Plaintiff, MARK W. DOBRONSKI, appearing *in propria persona*, and for his complaint against Defendants alleges:

1. This matter arises under the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, *et seq.*, the Michigan Telephone Companies as Common Carriers Act ("MTCCCA"), M.C.L. § 484.101, *et seq.*, the Michigan Home Solicitation Sales Act ("MHSSA"), M.C.L. § 445.101, *et seq.*, and the Florida Telemarketing Sales Law ("FTSL"), Fla. Stat. § 501.059, *et seq.*

### Parties

2. Plaintiff is an individual, of the age of majority, a citizen of the United States of America, has a place of business and residence in Lima Township, Washtenaw County, Michigan, and has a place of business in the City of Westland, Wayne County, Michigan.

3. Upon information and belief, Defendant SOLIDQUOTE LLC ("Solidquote"), is a limited liability company organized and existing under the laws of the State of Delaware, with a purported principal place of business being located at 13918 East Mississippi Avenue, Suite 61234, Aurora, Colorado 80012-3603. Service of process may be effected upon Solidquote via its registered agent, The

Corporation Trust Company, located at 1209 North Orange Street, Wilmington, Delaware 19801-1120.

4. In fact, Solidquote's purported principal place of business is a mail slot in a The UPS Store location.

5. Upon information and belief, Defendant QUOTEMANAGE, LLC ("Quotemanage"), is a limited liability company organized and existing under the laws of the State of Delaware, with a principal principal place of business being located at 53 Bridge Street, 7th Floor, Brooklyn, New York 11201-7900. Service of process may be effected upon Quotemanage via its registered agent, CT Corporation System, 7700 East Arapahoe Road, Suite 220, Centennial, Colorado 80112-1268.

6.      Upon information and belief, Defendant ACCUQUOTE, INC. ("Accuquote"), is a corporation organized and existing under the laws of the State of Illinois, with a purported principal place of business being located at 1450 American Lane, Suite 1000, Schaumburg, Illinois 60173-4989. Service of process may be effected upon Accuquote via its registered agent, Illinois Corporation Service Company, located at 801 Adlai Stevenson Drive, Springfield, Illinois 62703-4261.

7. Upon information and belief, Defendant CONNIE HEALTH INC. ("Connie"), is a corporation organized and existing under the laws of the State of Delaware, with a purported principal place of business being located at 23 Harvard

3

Avenue, Suite 1, Brookline, Massachusetts 02446-6296. Service of process may be effected upon Connie via its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808-1674.

8.  Upon information and belief, Defendant STEFAN ALEXANDER WIRTZ ("Wirtz") is an individual, of the age of majority, is mentally competent, is not in the military service, and resides at 801 Colorado Court, Mission, Texas 78572-7488.

9.  Upon information and belief, Defendant JONATHON ALEX HARRIS ("Harris") is an individual, of the age of majority, is mentally competent, is not in the military service, and resides at 19 Bertram Street, Pensacola, Florida 32506-4739.

10.  Upon information and belief, Defendant JENNA GEMA GIVENS ("Givens") is an individual, of the age of majority, is mentally competent, is not in the military service, and resides at 38 Capehart Drive, Orlando, Florida 32807-6103.

11.  Upon information and belief, Defendant JOSEPH ELLIOTT ("Elliott") is an individual, of the age of majority, is mentally competent, is not in the military service, and has a business address of 2650 McCormick Drive, Suite 200G, Clearwater, Florida 33759-1005.

12.  Upon information and belief, Defendant LUMICO LIFE INSURANCE COMPANY ("Lumico"), is a corporation organized and existing under the laws of the State of Missouri, with a purported principal place of business being located at

237 East High Street, Jefferson City, Missouri 65101. Service of process may be effected upon Lumico via its registered agent, The Corporation Company, located at 40600 Ann Arbor Road East, Suite 201, Plymouth, Michigan 48170-4675.

## Jurisdiction

13. This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

14. This Court has limited personal jurisdiction over Defendants Solidquote, Quotemanage, Accuquote, Connie, and Lumico pursuant to M.C.L. § 600.715, as a result of the defendant transacting any business within the state; and/or doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort; and/or contracting to insure any person, property, or risk located within this state at the time of contracting.

15. In addition, Defendant Lumico is licensed, pursuant to M.C.L. § 500.402, *et seq.*, by the Michigan Department of Insurance and Financial Services ("MDIFS") to act as insurers and to transact insurance in the state of Michigan.

16. This Court has limited personal jurisdiction over Defendants Wirtz, Harris, Givens, and Elliott, pursuant to M.C.L. § 600.705, as a result of the defendants transacting any business within the state; and/or doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort; and/or

5

contracting to insure any person, property, or risk located within this state at the time of contracting.

17. In addition, Defendants Accuquote, Quotemanage, Wirtz, Harris, Givens, and Elliott are each licensed, pursuant to M.C.L. § 500.1201a, *et seq.*, by the MDIFS to act as insurance producers to sell, solicit, and negotiate insurance in the state of Michigan.

## Venue

18. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(2), as the tortious or illegal telephone calls complained of herein were received in this judicial district.

## The Telemarketing Laws

19. In response to widespread public outrage over intrusive telemarketing calls to homes and businesses, the United States Congress acted to prevent entities, like Defendant, from invading American citizen's privacy and to prevent abusive "robo-calls" by enacting the TCPA.

20. According to the Federal Communications Commission ("FCC"), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls."

21.  Congress explicitly found that robo-calling is an invasion of privacy.

22.  In regard to such telephone solicitations, Senator Hollings of South Carolina, the primary sponsor of the bill, explained, "computerized calls are the scourge of modern civilization.  They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall... these computerized telephone calls threaten our personal safety... These machines are out of control, and their use is growing by 30 percent every year.  It is telephone terrorism, and it has got to stop...." See *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 17 FCC Rcd. 17459, 17474, fn. 90 (2002), quoting 137 Cong. Rec. 30,821-30,822 (Nov. 7, 1991).

23.  According to YourMail, Inc., a company which tracks robocall activity and publishes the YouMail Robocall Index, during calendar year 2021 alone, American consumers were bombarded with over 50.5 *billion* robocalls; an average of over 150 robocalls to each man, woman, and child. [Source: www.robocallindex.com ].

24.  In 2021, nearly 1 in 3 Americans say they have fallen victim to a phone scam in the past year, with reported losses to phone scams exceeding $29.8 Billion. [Source:   www.cndb.com/2021/06/29/americans-list-billions-of-dollars-to-phone-scams-over-the-past-year.html ].

25. Congress has found that interstate telemarketing fraud has become a problem of such magnitude that the resources of the Government are not sufficient to ensure adequate consumer protection from such fraud.

26. As a result, in enacting the TCPA, Congress intentionally created a legally enforceable bounty system, not unlike *qui tam* statutes, to incentivize the assistance of aggrieved private citizens to act as "private attorneys general" in enforcing federal law.

27. The TCPA, at 47 U.S.C. § 227(b), promulgates in relevant part as follows:

"Restrictions on use of automated telephone equipment

(1) Prohibitions It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States— ...

(B) to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order by the Commission under paragraph (2)(B)...."

28. Pursuant to authority delegated by Congress to the FCC under the TCPA at 47 U.S.C. § 227(b)(2), the FCC has adopted regulations to implement and carry out the TCPA.

29. The TCPA implementing regulations, at 47 C.F.R. § 64.1200, promulgate

in relevant part:

> "(a) No person or entity may: ...
>
> (3) Initiate any telephone call to any residential line using an artificial or prerecorded voice to deliver a message without the prior express written consent of the called party, unless the call;
>
> (i) Is made for emergency purposes;
>
> (ii) Is not made for a commercial purpose;
>
> (iii) Is made for a commercial purpose but does not include or introduce an advertisement or constitute telemarketing;
>
> (iv) Is made by or on behalf of a tax-exempt nonprofit organization; or
>
> (v) Delivers a "health care" message made by, or on behalf of, a "covered entity" or its "business associate," as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103...
>
> (d) No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards: ...
>
> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone

number provided may not be a 900 number or any other
number for which charges exceed local or long distance
transmission charges...."

30.  The TCPA implementing regulations at, 47 C.F.R. § 64.1601, additionally

promulgate in relevant part:

"(e) Any person or entity that engages in telemarketing, as
defined in section 64.1200(f)(10) **must** transmit caller
identification information.

(1) For purposes of this paragraph, **caller identification
information must include either CPN or ANI, and,
when available by the telemarketer's carrier, the name
of the telemarketer**. It shall not be a violation of this
paragraph to substitute (for the name and phone number
used in, or billed for, making the call) the name of the
seller on behalf of which the telemarketing call is placed
and the seller's customer service telephone number. **The
telephone number so provided must permit any
individual to make a do-not-call request during regular
business hours.**

(2) Any person or entity that engages in telemarketing is
prohibited from blocking the transmission of caller
identification information." [Emphasis added.]

31.  The TCPA, at 47 U.S.C. § 227(b)(3), provides for a private right of action,

as follows:

"PRIVATE RIGHT OF ACTION.  **A person or entity**
may, if otherwise permitted by the laws or rules of court of
a State, bring in an appropriate court of that State –

(A) an action based on a violation of this **subsection or the
regulations prescribed under this subsection** to enjoin

10

such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages **for each such violation**, whichever is greater, or

(C) both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." [Emphasis added.]

32. Pursuant to Congressional mandate set forth at 47 U.S.C. § 227(c)(1), the FCC adopted regulations establishing a national "do not call" database and prohibiting any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included in such database, which regulations are set forth at 47 C.F.R. § 64.1200(c), and promulgate in relevant part:

"No person or entity shall initiate any telephone solicitation to:...

"(2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government...."

33. Additionally, the TCPA, at 47 U.S.C. § 227(c)(5), provides for a private right of action, as follows:

"Private right of action.  A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in **violation of the regulations prescribed under this subsection** may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—

(A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages **for each such violation**, whichever is greater, or

(C)  both such actions.

It shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection. If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph."

34.  The MTCCCA, at M.C.L. § 484.125, promulgates in relevant part as follows:

"(2) A caller shall not use a telephone line to contact a subscriber at the subscriber's residence, business, or toll-free telephone number to do either of the following: ...

(a) Deliver a recorded message for the purpose of presenting commercial advertising to the subscriber, unless

12

either of the following occurs:

(i) The subscriber has knowingly and voluntarily requested, consented, permitted, or authorized the contact from the caller.

(ii) The subscriber has knowingly and voluntarily provided his or her telephone number to the caller.

(b) Deliver or attempt to deliver intrastate commercial advertising if the caller activates a feature to block the display of caller identification information that would otherwise be available to the subscriber...

(5) A subscriber contacted by a caller in violation of this section may bring an action to recover damages of $1,000.00, together with reasonable attorneys' fees...

(9) A caller who violates this section is guilty of a misdemeanor, punishable by a fine of $1,000.00 or imprisonment for 10 days, or both."

35. The MHSSA, at M.C.L. § 445.111a(5), promulgates:

". . . A telephone solicitor shall not make a telephone solicitation to a residential telephone subscriber whose name and residential telephone number is on the then-current version of the federal [do-not-call] list."

36. The MHSSA, at M.C.L. § 445.111b, promulgates in relevant part:

"(1) At the beginning of a telephone solicitation, a person making a telephone solicitation to a residential telephone subscriber shall state his or her name and the full name of the organization or other person on whose behalf the call was initiated and provide a telephone number of the organization or other person on request. A natural person must be available to answer the telephone number at any

time when telephone solicitations are being made.

(2) The person answering the telephone number required under subsection (1) shall provide a residential telephone subscriber calling the telephone number with information describing the organization or other person on whose behalf the telephone solicitation was made to the residential telephone subscriber and describing the telephone solicitation.

(3) A telephone solicitor shall not intentionally block or otherwise interfere with the caller ID function on the telephone of a residential telephone subscriber to whom a telephone solicitation is made so that the telephone number of the caller is not displayed on the telephone of the residential telephone subscriber."

37.  The MHSSA, at M.C.L. § 445.111c, promulgates in relevant part as

follows:

"(1) It is an unfair or deceptive act or practice and a violation of this act for a telephone solicitor to do any of the following:...

(f) Fail to comply with the requirements of section 1a or 1b.

(2) ... [A] person who knowingly or intentionally violates this section is guilty of a misdemeanor punishable by imprisonment for not more than 6 months or a fine of not more than $500.00, or both.

(3) A person who suffers loss as a result of violation of this section may bring an action to recover actual damages or $250.00, whichever is greater, together with reasonable attorney fees."

38. The FTSL, at Fla. Stat. § 501.059, promulgates in relevant part as follows:

"(2) Any telephone solicitor who makes an unsolicited telephonic sales call to a residential, mobile, or telephonic paging device telephone number shall identify himself or herself by his or her true first and last names and the business on whose behalf he or she is soliciting immediately upon making contact by telephone with the person who is the object of the telephone solicitation...

(8)(a) A person may not make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party.

(b) It shall be unlawful for any person who makes a telephonic sales call or causes a telephonic sales call to be made to fail to transmit or cause not to be transmitted the originating telephone number and, when made available by the telephone solicitor's carrier, the name of the telephone solicitor to any caller identification service in use by a recipient of a telephonic sales call. However, it is not a violation to substitute, for the name and telephone number used in or billed for making the call, the name of the seller on behalf of which a telephonic sales call is placed and the seller's customer service telephone number, which is answered during regular business hours. If a telephone number is made available through a caller identification service as a result of a telephonic sales call, the solicitor must ensure that telephone number is capable of receiving telephone calls and must connect the original call recipient, upon calling such number, to the telephone solicitor or to the seller on behalf of which a telephonic sales call was placed. For purposes of this section, the term "caller identification service" means a service that allows a telephone subscriber to have the telephone number and,

where available, the name of the calling party transmitted contemporaneously with the telephone call and displayed on a device in or connected to the subscriber's telephone...

(10)(a) A called party who is aggrieved by a violation of this section may bring an action to:

1. Enjoin such violation.

2. Recover actual damages or $500, whichever is greater.

(b) If the court finds that the defendant willfully or knowingly violated this section or rules adopted pursuant to this section, the court may, in its discretion, increase the amount of the award to an amount equal to not more than three times the amount available under paragraph (a)...."

39.  Plaintiff's telephone lines have been besieged with telemarketing calls hawking such things as alarm systems, Google listings, automobile warranties, health insurance, life insurance, credit cards, and even financial miracles from God. Some calls are blatant scams, including calls purportedly from the Social Security Administration, the U.S. Drug Enforcement Administration, and other government agencies, claiming that arrest warrants have been issued against Plaintiff for alleged drug trafficking and money laundering activities.

40.  Plaintiff's residential telephone numbers are ***-0222, ***-1000, and ***-1212.

41.  Plaintiff's residential telephone number ***-0222 is listed on the National Do Not Call Registry maintained by the United States Federal Trade Commission

16

pursuant to 16 C.F.R. Part 310 and have been so listed continuously since at least August 24, 2022 and at all times subsequent thereto.

42. Plaintiff's residential telephone numbers ***-1212 is listed on the National Do Not Call Registry maintained by the United States Federal Trade Commission pursuant to 16 C.F.R. Part 310 and have been so listed continuously since at least June 29, 2003 and at all times subsequent thereto.

43. By listing his residential telephone numbers on the National Do Not Call Registry, Plaintiff has given constructive notice to the world, including each and every one of the Defendants, that Plaintiff does not wish to receive telephone solicitations or robocalls at his residential and/or cellular telephone numbers.

44. Courts are legally bound to give great deference to the FCC's interpretations of the TCPA and its own regulations.

45. The FCC has issued a declaratory ruling defining "called party" as "the subscriber, i.e., the consumer assigned the telephone number dialed and billed for the call, or the **non-subscriber customary user of a telephone number included in a family or business calling plan**." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02–278, WC Docket No. 07–135, FCC 15–72, 2015 WL 4387780, at *26 ¶ 73 (FCC July 10, 2015) [Emphasis added].

46. Plaintiff is a customary user of the called telephone lines, is the one that was the actual recipient of the telephone calls at issue in this complaint, and suffered the nuisance and invasion of privacy of same. Thus, Plaintiff has standing to bring this action for alleged violations of TCPA's robocall provisions. See *Leyse v. Bank of America Nat. Ass'n*, 804 F.3d 316, 324 (C.A.3, 2015).

47. At no time relevant hereto has Plaintiff or any other authorized person requested, consented, permitted, or authorized the contact from the Defendants.

48. At no time has Plaintiff provided permission to the Defendant to engage in telephone solicitation with the Plaintiff via telephone.

49. At no time has Plaintiff provided "prior express written consent" (as that terms is defined under the TCPA and as interpreted by the FCC) for any of the Defendants or anyone acting on behalf of the Defendants to initiate any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to Plaintiff's residential telephone number.

50. At no time has Plaintiff had an "established business relationship" (as that term is defined under the TCPA and as interpreted by the FCC) with any of the Defendants.

51. The FCC has declared that purporting to receive consent during a call does

not constitute the *prior* consent necessary to deliver the message in the first place, as the request is part of the telemarketing. See *In re Rules and Regulations Implementing the TCPA*, 18 FCC Rcd. 14014, 14019, 2003 WL 21517853, at *49, ¶ 142 (June 26, 2003).

52. The FCC has clarified that sellers may be held vicariously liable for violations of the TCPA by third-party telemarketers that initiate calls to market the seller's products or services, declaring as follows:

> "[A] company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules and calls placed by a third party on behalf of that company are treated as if the company itself placed the call."

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling, 20 FCC Rcd 13664, 13667, ¶ 7 (2005).

53. Pursuant to 47 U.S.C. § 217, the act, omission, or failure of any officer, agent, or other person acting for or employed by an common carrier or user, acting within the scope of his employment, shall in every case also be deemed to be the act, omission, or failure of such carrier or user as well as that of the person.

54. When considering individual corporate officer liability, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See, e.g., Jackson Five Star Catering, Inc. v.*

*Beason,* No. 10-10010, 2013 U.S. Dist. LEXIS 155985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participating in or personally authorized the conduct found to have violated the statute.") (internal citation omitted); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D.MD. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

55. It is well settled under both Michigan and Florida law that corporate employees and officials are personally liable for all tortious and criminal acts in which they participate, regardless of whether they are acting on their own behalf or on behalf of a corporation. A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent for the corporation and not on his own behalf.

56. For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of invasion of privacy and intrusion on Plaintiff's right of seclusion.

57. For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of the occupation of the telephone line by unwelcome

calls, making the phone unavailable for legitimate callers or outgoing calls, including emergency calls, when the telephone line was seized by Defendant's calls.

58. For each and every call alleged herein initiated to Plaintiff's telephone line, Defendants caused an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features on Plaintiff's telephone, which features are designed to inform the user of important missed communications.

59. Each and every call placed without consent by Defendants alleged herein to Plaintiff's telephone lines resulted in the injury of a trespass to Plaintiff's chattel, namely Plaintiff's telephone line and its telephone services.

60. For purposes of the TCPA, the FCC has defined "willfully or knowingly" to mean that the violator knew that he was doing the act in question, in this case, initiating a telephone solicitation, irrespective of any intent to violate the law. A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance.

**<u>Allegations Specific to this Complaint</u>**

61. Defendant SolidQuote describes itself on its Internet web site, as follows:

21

> "SolidQuote is a product and/or service matching service, matching consumers with persons or companies that offer products and/or services of interest to consumers. SolidQuote is not a licensed broker, carrier or direct provider of insurance products or services."

[Source: www.SolidQuote.com ].

62.  What SolidQuote does is sell "leads" of consumers who may be seeking insurance to insurance brokers (in this case, Accuquote and QuoteManage) and insurance agents (in this case, Wirtz, Harris, Givens, and Elliott).

63.  Telemarketing is integral to SolidQuote's business scheme.

64.  SolidQuote hires third-party call centers, typically located outside the United States expressly in order to attempt to skirt federal and state laws, such as the TCPA, MTCCCA, MHSSA, and the FTSL, and to realize a cost savings because of the substantially lower wages paid in these foreign locations.

65.  The third-party call centers hire individuals to act as telemarketers – to act as lead generators by pre-qualifying called consumers as to whether the consumer meets the qualification criteria for specific insurance products – known in telemarketing parlance as "ropers" or "roping."

66.  The identities of the third-party call centers are unknown to Plaintiff at this time, but are well known to SolidQuote, and through the course of discovery Plaintiff intends to learn the identities of said third-party call centers, at which time Plaintiff

will amend his Complaint to name said third-party call centers as additional defendants.

67. These third-party call centers utilize automatic telephone dialing platforms and services to facilitate telephoning consumers *en masse*.

68. These automatic telephone dialing platforms can store lists of telephone numbers (and, often, personal information) of consumers and use a random number or sequential number generator which has the capacity to select and initiate calls to persons from the stored lists of telephone numbers with no human involvement and only route the call to a telemarketing agent when a called person has actually answered the call.

69. The automatic telephone dialing system increases the efficiency of the third-party call center because the telephone solicitors at the call center are only transferred calls where a consumer has answered and thus avoid wasted time dialing telephone numbers and waiting to see if a called telephone number is answered.

70. The lead generator or "roper" will engage in deceptive and illegal techniques to solicit consumers, including, *inter alia*: manipulating the caller identification such that the caller cannot be easily identified or called back; identifying with a false or generic-sounding business name; deliberately calling telephone numbers which appear on the National Do Not Call Registry; refusing to

provide identifying information to the called party upon inquiry; uttering profanities to or otherwise threatening or harassing the called party if the consumer does not cooperate by expressing interest or providing requested personal information or the called party requests not to be called.

71.   Once a lead generator or "roper" has a consumer who meets the qualification criteria – referred to in telemarketing slang as the "mark" – the lead generator will then live transfer the call to another co-worker – usually identified as the "senior supervisor" or "verification officer" -- to verify the information with the called party.

72.   Once a called party has been pre-qualified and information verified, the third-party call center will then live transfer the call to SolidQuote.

73.   When the third-party call center live transfers the call to SolidQuote, the third-party also digitally transmits to SolidQuote the basic qualifying information obtained form the consumer such that the information is displayed on the computer screen of the answering agent at SolidQuote.

74.   The answering agent at SolidQuote will then speak to the consumer, ask further qualifying questions, and based upon qualification criteria, will then live transfer the call to a licensed insurance broker or licensed insurance agent that has paid SolidQuote to supply them with "live transfer telemarketing leads."

74.     The licensed insurance broker (in this case, being AccuQuote, QuoteManage, or Connie) or licensed insurance agent (in this case, being Wirtz, Harris, Givens, or Elliott) will then speak to the consumer and attempt to match the consumer to an appropriate insurance product and then attempt to submit an application for insurance to the insurance company selected by the insurance broker or insurance agent.

75. SolidQuote, the insurance brokers, the insurance agents, and the insurance companies (in this case, Lumico) all are well aware of the illegal tactics being used by SolidQuote and its third-party call centers, but are deliberately indifferent to what is occurring by engaging in willful blindness and representing that they are "unaware" of the illegal telemarketing conduct, and to be able to claim that if anyone is guilty of any violation it is the anonymous third-party call center.

76. SolidQuote, the insurance brokers, the insurance agents, and the insurance companies are well aware that the automatic telephone dialing platforms and telemarketing activities which it directs its agents to utilize are illegal and violate the TCPA.

77. SolidQuote is well aware of the illegal activities being engaged by its third-party call centers as numerous consumers have filed complaints with the Better Business Bureau, which has forwarded those complaints to SolidQuote, regarding

SolidQuotes telemarketing campaigns.

78.   Following are several consumer complaints which appear on the BBB

website regarding SolidQuote's telemarketing practices.

**Initial Complaint**
10/03/2022

**Complaint Type:** Problems with Product/Service
**Status:** Answered ●

This company is using third party advertisers to telemarket for them. I received multiple telemarketing texts to my cell phone, which is on the Do Not Call list. When I click the link in the texts, they lead to a**** Financial Assistance" website, which in turn, leads to "Speedy Auto Rates", when you click the "Start Here" button, which list's Solid Quote's phone number on top. I never gave this company permission to telemarket me. When I called and emailed them to seek resolution to the matter, I was ignored. I am sure this company is aware, due to the myriad complaints along with several lawsuits against them, that even if they use a third party to telemarket for them, they are in violation of the Federal TCPA. Therefore, at this point, to resolve this matter, I will need to speak to their attorney, or they can forward my complaint to their third party advertiser, and that advertiser can take responsibility. If neither of those two things happen, I will be contacting an attorney that specializes in TCPA matters, and forwarding the issue to them. I will also seek inquiry with the *** in getting this company to stop it's TCPA violations.

**Initial Complaint**
02/26/2020

**Complaint Type:** Advertising/Sales Issues
**Status:** Answered ●

This company has called my number couple of times despite being registered on the Do Not Call list an with out my written consent. This company called on this date 12/20/2019 for the first time from number 210-220-1814 an spoke to **** then transferred to ********. Then second called was on this date 12/27/2019 an spoke to ***** then transferred to *****. I've send a certified letter mailed out on 01/15/2020 for violations of the TCPA rules for unsolicited calls an was received on 1/17/2020 the return receipt was mailed back signed. Upon receiving letter the company had 5 days reply but seems to be ignored. I did a follow up by mean of a call just to hear a recording saying SORRY YOUR NUMBER IS ON THE DNC list thank you an hags up.

**Initial Complaint**
04/25/2022

**Complaint Type:** Problems with Product/Service
**Status:** Answered ●

This company has repeatedly called my cellphone trying to sell me some type of insurance service. They have been told to stop many times. I've clicked the number that says remove me from their call list. That doesn't work. If I press "2" and get a call screener, and tell them I want to be removed, they hang up on me. My number is on the do not call list, and they have ignored that fact. I've used my block feature on my phone but they call multiple times a day. It's 2:33 and they've already called me three times today (April 25, 2022). The numbers they used today are... ****************-514-2804, and ************.

79. Additionally, SolidQuote has been sued multiple times in several federal district courts, including several class action lawsuits, stemming from SolidQuote's illegal telemarketing activities.

80. Despite SolidQuote being fully knowledgeable about its illegal telemarketing activities, SolidQuote continues to engage in willful blindness and takes no action to curtail the illegal telemarketing activities.

81. The insurance companies (in this case, Lumico) support and facilitate the scheme by, *inter alia*, providing the licensed insurance brokers and licensed insurance agents with access to the Insurance Companies' computer systems for pricing; the ability to enter data into the Insurance Companies' systems; and the authority to use the insurance company's trade name and trademark or service mark.

82. The insurance companies ratify the conduct by accepting the benefits (i.e., the applications for insurance, and the resultant premiums when insurance policies are issued) realized from the telemarketing activity.

83. In the past 12 months alone, Plaintiff has received well over 500 telephone calls from telemarketers who have falsified or "spoofed" their caller identification and who have identify as being with "Senior Benefits", "American Benefits", "Medicare Benefits", "American Senior Care" or similar generic sounding names, and during

which call where Plaintiff was unable to develop the true identify of the ultimately responsible seller.

84.  Because the telemarketers engage in such deceptive practices designed to conceal their actual identities, Plaintiff has had to engage in various investigative techniques to identify the sources of the telemarketing calls being received.

85.  One investigative technique utilized by Plaintiff is termed a "canary trap", wherein Plaintiff provides false, but unique, identifying information during each received call, in particular a unique name.  If and when that unique information surfaces at a later date, a tie-in between the two events, and hence the ability to identify the source call, is able to be made.

86.  As discovery progresses in this case and Plaintiff is able to learn the identity or identities of the call centers that Defendants have utilized to initiate the telephone solicitations, Plaintiff will seek to amend this complaint to add the call centers as additional named defendants.

87.  Also as discovery progresses in this case, Plaintiff anticipates learning of additional telephone solicitation calls for which Defendants or Defendants' agents are responsible, at which time Plaintiff will seek to amend this complaint to supplement the damages claims.

<u>Call Number 1</u>

88. On April 6, 2022, at approximately 1:18 P.M., Defendants or Defendants' agent, initiated a call to Plaintiff's residential telephone line ***-1212.

89. The caller identification number display was 734-492-7892, and no caller identification name was displayed.

90. Upon answering the incoming call by saying "hello", Plaintiff heard a "boink" sound and then silence for approximately 5 seconds, then a live person came on the line and identified himself as "Josh... with U.S. Savings" calling regarding auto insurance.

91. Josh then asked Plaintiff some pre-qualifying questions.

92. The call was then transferred to another telemarketer who identified himself as "Jonathon with SolidQuote."

93. Jonathon then asked Plaintiff more qualifying questions, then stated that they did not have an agent in Plaintiff's area.

94. Jonathon sought to obtain permission from Plaintiff to send text messages to Plaintiff's cell phone, which Plaintiff refused.

95. Upon iquiry, Jonathon disclosed that he was located in Florida.

96. Upon direct inquiry, Jonathon refused to provide his last name.

97. Immediately after termination of the call, Plaintiff dialed the caller identification number displayed (734-492-7892), which was a non-working number.

<u>Call Number 2</u>

98. On May 16, 2022, at approximately 7:05 P.M., Defendants or Defendants' agent, initiated a call to Plaintiff's residential telephone line ***-1000.

99. The caller identification number display was 734-828-2758, and no caller identification name was displayed.

100. Upon answering the incoming call by saying "hello", Plaintiff heard a "boink" sound and then silence for approximately 5 seconds, then a pre-recorded message came on stating "Hi, this is Mary with American Senior Citizen Care..."

101. An interactive voice response process then followed asking pre-qualifying questions of Plaintiff.

102. The call was then transferred to a live telemarketer who identified himself as "Jason... the senior verifier at Senior Care" who then reviewed the pre-qualifying responses given by Plaintiff.

103. The call was then transferred to a telemarketer who identified herself as Ladray (phoenetic) with Solid Quote.

104. Ladray then sough further personal identifying information including a *faux* name of Thomas Wilson Lazar.

105. The call was then transferred to Stefan Wirtz from AccuQuote who attmpted to sell Plaintiff a $20,000 life insurance policy from Lumico.

106. During the course of the call, Plaintiff inquired as to the identity of the person who initiated the call, to which Wirtz responded that "we pay them to identify and prescreen potential customers."

107. On May 16, 2022, at 7:19 P.M., Plaintiff received an email from Lumico addressed to Thomas Lazar which included, *inter alia*, a Lumico life insurance application form.

108. Immediately after termination of the call, Plaintiff dialed the caller identification number displayed (734-828-2758), which was a non-working number.

Call Number 3

109. On July 6, 2022, at approximately 1:32 P.M., Defendants or Defendants' agent, initiated a call to Plaintiff's residential telephone line ***-1212.

110. The caller identification number display was 734-493-9716, and the caller identification name displayed was SPAM CALL.

111. Upon answering the incoming call by saying "hello", Plaintiff heard a "boink" sound and then silence for approximately 5 seconds, then a live person came on the line and identified himself as "Danny... with Health Care Benefits."

112. Danny then asked Plaintiff some pre-qualifying questions regarding Plaintiff's Medicare coverage.

113. The call was then transferred to another telemarketer who identified

herself as "Doris with SolidQuote."

114. Doris then asked Plaintiff more qualifying questions, then stated that they did not have an agent in Plaintiff's area.

115. Immediately after termination of the call, Plaintiff dialed the caller identification number displayed (734-493-9716), which was a non-working number.

<u>Call Number 4</u>

116. On July 27, 2022, at approximately 6:46 P.M., Defendants or Defendants' agent, initiated a call to Plaintiff's residential telephone line ***-1212.

117. The caller identification number display was 734-476-0940, and the caller identification name displayed was SPAM CALL.

118. Upon answering the incoming call by saying "hello", Plaintiff heard a "click" sound and then silence for approximately 11 seconds, then a live person came on the line and identified himself as "John... with U.S. Savings Center."

119. John then asked Plaintiff some pre-qualifying questions regarding Plaintiff's Medicare coverage.

120. The call was then transferred to another telemarketer who identified herself as "Quanisha with SolidQuote."

121. Quanisha then asked Plaintiff more qualifying questions, then stated that they did not have an agent in Plaintiff's area.

122. Immediately after termination of the call, Plaintiff dialed the caller identification number displayed (734-476-0940), which was a non-working number.

Call Number 5

123. On October 17, 2022, at approximately 12:57 P.M., Defendants or Defendants' agent, initiated a call to Plaintiff's residential telephone line ***-0222.

124. The caller identification number display was 937-421-8871, and the caller identification name displayed was blank.

125. Upon answering the incoming call by saying "hello", Plaintiff heard a "boink" sound and then silence for approximately 5 seconds, then a live person came on the line and identified himself as "Mike... with Health Care Benefits."

126. Mike then asked Plaintiff some pre-qualifying questions regarding Plaintiff's Medicare coverage.

127. The call was then transferred to another telemarketer who identified himself as "Jordan... on a recorded line" who then reviewed the same questions asked by Danny.

128. The call was then transferred to another telemarketer who identified herself as "Francine...with SolidQuote," who then asked more qualifying questions.

129. The call was then transferred to another telemarketer who identified himself as John Harris with QuoteManage.

130.  Plaintiff inquired of Harris as to the caller that initiated the call, to which Harris stated that person was a lead generator that live transfers calls to him.

131.  Plaintiff told Harris that Plaintiff's telephone number was listed on the National Do Not Call list, and Harris immediately slammed down the phone and hung up.

132.  Immediately after termination of the call, Plaintiff dialed the caller identification number displayed (937-421-8871), which was a non-working number.

Call Number 6

133.  On October 17, 2022, at approximately 10:02A.M., Defendants or Defendants' agent, initiated a call to Plaintiff's residential telephone line ***-0222.

134.  The caller identification number display was 239-667-4141, and the caller identification name displayed was blank.

135.  Upon answering the incoming call by saying "hello", Plaintiff heard a "boink" sound and then silence for approximately 5 seconds, then a live person came on the line and identified himself as "Daniel ... with U.S. Auto Care."

136.  Daniel then asked Plaintiff some pre-qualifying questions.

137.  The call suddenly disconnected.

138.  Immediately after termination of the call, Plaintiff dialed the caller identification number displayed (239-667-4141), and received a reorder signal.

<u>Call Number 7</u>

139.   On October 17, 2022, at approximately 10:33A.M., Defendants or Defendants' agent, initiated a call to Plaintiff's residential telephone line \*\*\*-0222.

134.   The caller identification number display was 239-361-9285, and the caller identification name displayed was M031103238000.

135.   Upon answering the incoming call by saying "hello", Plaintiff heard a "click" sound and then silence for approximately 3 seconds, then the same "Daniel" from Call Number 6 came onto the line and explained that they were having equipment problems.

136.   Daniel then asked Plaintiff some pre-qualifying questions regarding Plaintiff's automobile insurance.

137.   The call was then transferred to a telemarketer who identified herself as Sierra with SolidQuote.

138.   Sierra asked Plaintiff qualifying questions regarding Plaintiff's automobile insurance.

139.   Plaintiff asked Sierra for her company street address, and she immediately hung up.

140.   Immediately after termination of the call, Plaintiff dialed the caller identification number displayed (239-361-9285), and received a reorder signal.

35

Call Number 8

141.   On November 22, 2022, at approximately 12:51 P.M., Defendants or Defendants' agent, initiated a call to Plaintiff's residential telephone line ***-0222.

142.   The caller identification number display was 209-864-4649, and the caller identification name displayed was blank.

143.   Upon answering the incoming call by saying "hello", Plaintiff heard a "boink" sound and then silence for approximately 5 seconds, then a live person came on the line and identified himself as "David... in the Medicare Department."

144.   David then asked Plaintiff some pre-qualifying questions.

145.   The call was then transferred to a telemarketer who identified himself merely as "the senior supervisor", who asked Plaintiff the same pre-qualifying questions.

146.   The call was then transferred to a telemarketer who identified herself as Cody with SolidQuote.

147.   Cody reviewed the same qualifying questions.

148.   The call was then transferred to a telemarketer who identified himself as Jason with Connie Health.

149.   Jason asked some qualifying questions.

150.   Upon inquiry, Jason refused to provide his last name, stating that "we

don't give out last names until you have a policy."

151. The call was then transferred to a licensed insurance agent who identified herself as Jenna Givens with Connie Health.

152. After some pre-qualifying questions, Givens stated that Plaintiff needed to complete a "scope of appointment" form.

153. On November 22, 2022, at 1:20 P.M., Plaintiff received an email from Givens addressed to the "canary trap" name which Plaintiff had provided during this call which included a scope of appointment form.

154. Plaintiff complained to Givens regarding the repetitive Medicare calls which Plaintiff keeps receiving, to which Givens explained the process of how they use lead companies that go into databases to acquire people's names and telephone numbers and then transfer those calls to Givens. Givens stated that Plaintiff's information has been sold to many companies.

155. Plaintiff asked Givens for a copy of their do not call policy, but Givens could not provide one.

156. Immediately after termination of the call, Plaintiff dialed the caller identification number displayed (209-864-4649), and received a recorded message stating that the number dialed is unallocated.

## Call Number 9

157. On December 13, 2022, at approximately 4:28 P.M., Defendants or Defendants' agent, initiated a call to Plaintiff's residential telephone line \*\*\*-0222.

158. The caller identification number display was 351-206-0383, and the caller identification name displayed was blank.

159. Upon answering the incoming call by saying "hello", Plaintiff heard a "boink" sound and then silence for approximately 3 seconds, then a live person came on the line and identified himself as "John calling from the Medicare Department."

160. John then asked Plaintiff some pre-qualifying questions.

161. Without announcement the voice of another male telemarketer was heard asking the same pre-qualifying questions.

162. The call was then transferred to a telemarketer who identified herself as Valerie with SolidQuote.

163. Valerie asked some qualifying questions.

164. The call was then transferred to a telemarketer who identified himself as John Elliott with Senior Health Care Direct.

165. Elliott then attempted to sell Plaintiff a "Medicare Plan G" policy with Mutual of Omaha with a monthly premium price of $199.00.

166. To complete the application process, Elliott needed Plaintiff's Medicare

identification number.  Plaintiff stated that his Medicare card was outside in his automobile and that Plaintiff would have to call Elliott back.

167.  Immediately after termination of the call, Plaintiff dialed the caller identification number displayed (351-206-0383), and received a reorder signal.

Call Number 10

168   On January 11, 2023, at approximately 12:41 P.M., Defendants or Defendants' agent, initiated a call to Plaintiff's residential telephone line ***-0222.

169.  The caller identification number display was 561-730-3829, and the caller identification name displayed was blank.

170.  Upon answering the incoming call by saying "hello", Plaintiff heard a "boink" sound and then silence for approximately 5 seconds, then a live person came on the line and identified himself as "Jack ... with Senior Benefits."

171.  Jack then asked Plaintiff some pre-qualifying questions.

172.  The call was then transferred to a telemarketer who identified himslf as Chris with SolidQuote.

173.  As Chris was completing his introduction and stated that it would "be my pleasure to assist...", the call suddenly disconnected.

174.  Immediately after termination of the call, Plaintiff dialed the caller identification number displayed (561-730-3829), and received a recorded message

39

that the number was not in service.

Call Number 11

175. On January 25, 2023, at approximately 2:19 P.M., Defendants or Defendants' agent, initiated a call to Plaintiff's residential telephone line \*\*\*-0222.

176. The caller identification number display was 812-706-1282, and the caller identification name displayed was V125122131000.

177. Upon answering the incoming call by saying "hello", Plaintiff heard a "boink" sound and then silence for approximately 5 seconds, then a live person came on the line and identified himself as "Daniel... with U.S. Auto Care."

178. The caller in this call was the same caller who also identified himself as "Daniel... with U.S. Auto Care" as in Call Number 6 and Call Number 7, *supra*.

179. Daniel then asked Plaintiff some pre-qualifying questions.

180. Daniel announced that he was transferring the call to a licensed agent, at which point the call disconnected.

181. Immediately after termination of the call, Plaintiff dialed the caller identification number displayed (812-706-1282), and received a recorded message stating "your call cannot be completed as dialed, please check the number and call again" followed by a reorder signal.

**COUNT I**
**VIOLATION OF THE TCPA - ROBOCALL**

40

182.  Plaintiff incorporates the allegations of paragraphs 1 through 181, *supra.*

183.  Call Number 2 was in violation of the TCPA and its implementing regulations, specifically 47 U.S.C. § 227(b)(1)(B) and 47 C.F.R. § 64.1200(a)(3), as Defendant or Defendant's agent initiated a telephone call to Plaintiff's residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party and there being no emergency.

184.  The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

## COUNT II
## VIOLATION OF THE TCPA - ABANDONED CALL

185.  Plaintiff incorporates the allegations of paragraphs 1 through 181, *supra.*

186.  Each of Call Numbers 1 through 11 were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(a)(7)(i)(A), as the call was not connected to a live sales representative within two (2) seconds of the called person's completed greeting.

187.  The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

## COUNT III
## VIOLATION OF THE TCPA - NO OPT OUT

188.  Plaintiff incorporates the allegations of paragraphs 1 through 181, *supra.*

41

189. Call Number 2 was in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(a)(7)(i)(B), as the artificial or prerecorded voice message did not provide an automated interactive voice- and/or key press-activated opt-out mechanism that enables the called person to make a do-not-call request prior to terminating the call.

190. The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

## COUNT IV
## VIOLATION OF THE TCPA - DO NOT CALL

191. Plaintiff incorporates the allegations of paragraphs 1 through 181, *supra*.

192. Call Number 1, and Call Numbers 3 through 11 were each in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(c)(2), as Defendants or Defendants' agent initiated a telephone solicitation to a residential telephone subscriber who has registered his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government.

193. The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

## COUNT V
## VIOLATION OF THE TCPA - FALSE IDENTITY

194. Plaintiff incorporates the allegations of paragraphs 1 through 181, *supra*.

195. Call Numbers 1 through 11 were each in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(d)(4), as Defendants or Defendants' agent entity making the call for telemarketing purposes did not provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted.

195. The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

**COUNT VI**
**VIOLATION OF THE TCPA - FALSIFIED CALLER ID**

196. Plaintiff incorporates the allegations of paragraphs 1 through 181, *supra*.

197. Call Numbers 1 through 11 each were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1601(e)(1), as Defendants and/or Defendants' agents failed to provide caller identification information displaying a telephone number which would permit any individual to make a do-not-call request during regular business hours.

198. The Defendants had to take deliberate and overt action to manipulate the telephone network equipment to provide false caller identification information, therefore the aforesaid violation of the TCPA was wilful and/or knowing.

## COUNT VII
## VIOLATION OF THE MTCCCA

199.  Plaintiff incorporates the allegations of paragraphs 1 through 181, supra.

200.  Call Numbers 1 through 11 each were in violation of the of the MTCCCA, specifically M.C.L. § 484.125(2)(b), as Defendant or Defendant's agent delivered or attempted to deliver intrastate commercial advertising having activated a feature to block the display of caller identification information that would otherwise be available to the subscriber.

## COUNT VIII
## VIOLATION OF THE MHSSA

201.  Plaintiff incorporates the allegations of paragraphs 1 through 181, *supra.*

202.  Each of Call Numbers 1 through 11 were in violation of the MHSSA, specifically M.C.L. § 445.111a(5), as Defendants or Defendants' agent made a telephone solicitation to a residential telephone subscriber whose name and residential telephone number is on the federal do-not-call list; and/or M.C.L. 445.111b(1), as the person making the telephone solicitation did not state his or her name and the full name of the organization or other person on whose behalf the call was initiated; and/or M.C.L. 445.111b(3), as the telephone solicitor intentionally blocked or otherwise interfered with the caller identification function on the telephone of a residential telephone subscriber to whom a telephone solicitation is

44

made so that the telephone number of the caller is not displayed on the telephone of the residential telephone subscriber.

## COUNT IX
## VIOLATION OF THE FTSL

203. Plaintiff incorporates the allegations of paragraphs 1 through 181, *supra.*

204. Call Numbers 5, 6, 7, 8, 9, and 10 each were in violation of the FTSL: specifically Fla. Stat. § 501.059(2), as Defendants or Defendants' agent made an unsolicited telephonic sales call to a residential telephone number and did not identify himself by his or her true first and last names and the business immediately upon making contact by telephone with the person who is the object of the telephone solicitation; and/or Fla. Stat. § 501.059(8)(a), Defendants or Defendants' agent made and allowed a telephonic sales call to be made involving the playing of a recorded message without the prior express written consent of the called party; and/or Fla. Stat. § 501.059(b), Defendants or Defendants' agent caused a telephonic sales call to be made to fail to transmit the originating telephone number and the name of the telephone solicitor to any caller identification service in use by a recipient of a telephonic sales call.

### PRAYER FOR RELIEF

WHEREFORE, the aforesaid premises considered, Plaintiff prays that this Court enter a judgment for Plaintiff and against the Defendants, jointly and severally,

as follows:

A.      Damages:

     i.      Damages for violations of the TCPA alleged:

| Count | Violations |
|-------|------------|
| I     | 1          |
| II    | 11         |
| III   | 1          |
| IV    | 10         |
| V     | 11         |
| VI    | 11         |

A total of 45 violations at $500 per violation for damages of $22,500.00, which amount shall be trebled because the violations were willful and/or knowing, for total damages of $67,500.00.

    ii.      Damages for violations of the MTCCCA alleged at Count VII: 11 violations at $1,000 per violation, for damages of $11,000.00.

   iii.      Damages for violations of the MHSSA alleged at Count VIII: 11 violations at $250 per violation, for damages of $2,750.00.

    iv.      Damages for violation of the FTSL alleged at

Count IX: 6 calls at $500 per call, for

damages of $3,000.00.

The cumulative total amount of damages claimed in this action is $84,250.00, and in

the event of default judgment is the sum certain damages amount that will be sought.

B.  An award of Plaintiff's taxable costs and disbursements incurred in the

filing and prosecution of this action;

C.  An injunction enjoining Defendants from initiating any telephone calls to

Plaintiff's residential telephone and cellular telephone lines.

D.  Interest accruing from the date of filing until paid at the statutory rate; and,

E.  Such other and further relief as this Court deems necessary, reasonable,

prudent and proper under the circumstances.

Respectfully submitted,

Dated: February 7, 2023

Mark W. Dobronski
Post Office Box 85547
Westland, Michigan 48185-0547
Telephone: (734) 330-9671
Email: markdobronski@yahoo.com
Plaintiff *In Propria Persona*

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

County in which action arose: __Washtenaw, MI__

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

MARK W. DOBRONSKI

## DEFENDANTS

SOLIDQUOTE LLC; QUOTEMANAGE, LLC; ACCUQUOTE, INC.; CONNIE HEALTH INC.; STEFAN ALEXANDER WIRTZ; JONATHON ALEX HARRIS; JENNA GEMA GIVENS; et al.

**(b)** County of Residence of First Listed Plaintiff __Orange, FL__
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant __Arapahoe, CO__
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

PRO SE

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [x] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [x] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | Personal Injury | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | Product Liability | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | | | [ ] 790 Other Labor Litigation | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 791 Employee Retirement Income Security Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| | | | | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | | |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
47 USC 227

Brief description of cause:
Illegal telemarketing calls

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 84,250.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   [ ] Yes   [x] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
February 7, 2023

SIGNATURE OF ATTORNEY OF RECORD
*Mark W. Dobronski*

### FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## PURSUANT TO LOCAL RULE 83.11

1.           Is this a case that has been previously dismissed?     ☐ Yes

                                                                                               ☒ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

2.           Other than stated above, are there any pending or previously     ☐ Yes
discontinued or dismissed companion cases in this or any other
court, including state court? (Companion cases are matters in which     ☒ No
it appears substantially similar evidence will be offered or the same
or related parties are present and the cases arise out of the same
transaction or occurrence.)

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

Notes :

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL



UNITED
POSTAL

- Expected delivery date spe
- Domestic shipments includ
- USPS Tracking® service in
- Limited international insura
- When used internationally,

*Insurance does not cover certain it
Domestic Mail Manual at http://pe.u
** See International Mail Manual at h

FLAT RATE EI
ONE RATE ■ ANY WEIGH'

TRACKED ■ IN

PS00001000014

Retail

UNITED STATES
POSTAL SERVICE

P POSTAGE PAID
Origin: 48130
02/07/23
2525100130-09

$9.65

PRIORITY MAIL®

0 Lb 13.10 Oz

RDC 22

C052

EXPECTED DELIVERY DAY: 02/08/23

SHIP
TO:   231 W LAFAYETTE BLVD
      FL 5TH
      DETROIT MI 48226-2777

USPS TRACKING® #

9505 5123 0482 3038 9943 38

FROM:

MARK W DOBRONSKI
PO BOX 85547
WESTLAND, MI 48185-0547

TO:

UNITED STATES DISTRICT COURT
ATTN: CLERK'S OFFICE
231 W LAFAYETTE BLVD FL 5
DETROIT, MI 48226-2700